David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

|  |  |
|---|---|
| David Woodring,<br><br>          Plaintiff,<br><br>     v.<br><br>Experian Information Solutions, Inc., Equifax Information Services, LLC, Navient, and New York State Board of Higher Education,<br><br>          Defendants. | :<br>:<br>: Civil Action No.:<br>:<br>:<br>:<br>: **COMPLAINT FOR DAMAGES**<br>:<br>: **JURY TRIAL DEMANDED**<br>:<br>:<br>:<br>:<br>: |

### JURISDICTION AND VENUE

1.     This Court has federal question jurisdiction because this case arises out of violation of

federal law. 15 U.S.C. § 1681 *et seq.*; 28 U.S.C. § 1331; *Smith v. Community Lending, Inc.*,

773 F.Supp.2d 941, 946 (D. Nev. 2011).  This Court has supplemental jurisdiction over Plaintiff's Nevada state law claims.  *See* 28 U.S.C. § 1367.

2.   This action arises from violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x ("FCRA").

3.   Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendants are subject to personal jurisdiction in the County of Clark, State of Nevada as they conduct business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2). Further, Experian has a registered agent of service in Nevada and is listed with the Nevada Secretary of State as a foreign limited liability company doing business in Nevada.

## PARTIES

4.   Plaintiff David Woodring ("Plaintiff") is a natural person residing in the County of Clark, State of Nevada. In addition, Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).  Plaintiff is also a "consumer" as that term is defined by NRS 598C.040.

5.   Defendant Navient ("Navient") is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.  WFHM is a corporation doing business in Nevada.

6.   Defendant New York State Board of Higher Education ("NY Board") is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agencies, including – erroneously in Plaintiff's case – information on consumers in Nevada.  NY Board is a department of the State of New York.

7.    Defendant Experian Information Solutions, Inc. ("Experian") regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f) and a "Reporting Agency" as that term is defined by NRS 598C.100.  Experian is doing business in Nevada, with a principal place of business in Ohio.

8.    Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f), doing business with its principal place of business in Georgia.

9.    Unless otherwise indicated, the use of each Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of those Defendants.

**FACTUAL ALLEGATIONS**

**Statutory Background**

10.   Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  Consumer reporting agencies ("CRAs") have assumed a vital role in assembling and evaluating consumer credit; and the FCRA seeks to ensure that CRAs exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.  15 U.S.C. § 1681.

11.   The FCRA protects consumers through a tightly wound set of procedural protections from

the material risk of harms that otherwise flow from inaccurate reporting.  Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

12.   Plaintiff's case involves the intersection of a number of statutes under the FCRA, particularly Sections 1681e, 1681c-1, 1681c-2, 1681i, 1681g, and 1681s-2.  While factually detailed, Plaintiff's protracted attempt to remove information from his consumer information underscores Defendants' near-total abdication of those statutory duties applicable to each of them.

### Reasonable Procedures to Ensure Accuracy and Privacy – Section 1681e

13.   Sections 1681e(a) and 1681e(b) pertain to a CRA's procedures to ensure the accuracy and privacy of information stored in their systems which is sent to others.

14.   A central duty the FCRA imposes upon CRAs is the duty to protect the consumer's privacy by guarding against inappropriate disclosure to third parties.  15 U.S.C. § 1681b codifies this duty, and permits a CRA to disclose a consumer's information only for one of a handful of exclusively defined "permissible purposes."  To ensure compliance, CRAs must maintain reasonable procedures to ensure that Section 1681b consumer reports are made exclusively for permissible purposes.  15 U.S.C. § 1681e(a).  Additionally, Section 1681e(a) prohibits a CRA from furnishing "a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose

4

listed in section 681b of this title."[1]

15.   Section 1681e(b) provides that a CRA must "follow reasonable procedures to ensure maximum possible accuracy of the information concerning the individual about whom the report relates."   Nothing in the plain language of Section 1681e(b) pertains only to information transmitted to a third party.

16.   An item of information can be inaccurate because it is patently incorrect, or materially misleading.   A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data.  *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).[2]

### *Disclosures to Consumers – Section 1681g*

17.   The FCRA also entitles the consumer to take an active role in the protection of his or her sensitive personal information, by giving the consumer a right to request "All information in the consumer's file at the time of the request."   15 U.S.C. § 1681g(a)(1).[3]   "File," is explicitly defined in the FCRA, and when applied to consumers, means, "all of the information on that consumer and retained by a consumer reporting agency regardless of how the information is stored."   15 U.S.C. § 1681a(g).  The Ninth Circuit has defined "file"

---

[1] The FCRA defines "consumer report" broadly, as "any written, oral, or other communication of any information by a CRA bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title."  15 U.S.C. § 1681a(d).

[2] Additionally, reporting and rereporting patently incorrect and/or misleading statements also violates 15 U.S.C. § 1681g(a) because the lack of clarity in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

[3] This requirement is subject to exceptions in Sections 1681h(a)(1) and 1681g(a)(1)(A)-(B), which are not relevant here.

as all information the CRA maintains on a consumer that has been, or might be, included in a consumer report on that consumer. *Shaw v. Experian Information Solutions, Inc.*, 891 F.3d 749 (9th Cir. 2018).

18. Pursuant to section 1681g, when a CRA discloses to a consumer that consumer's file, the disclosure must "clearly and accurately" reflect all the information in that consumer's file at the time of the disclosure. 15 U.S.C. § 1681g(a)(1). The Ninth Circuit evaluates the clarity and accuracy of a disclosure by recourse to how an average consumer would view them. *See Shaw*, 891 F.3d at 759-60.

19. The information disclosed under Section 1681g of the FCRA must also include an identification of each person who "procured" a consumer report for employment or another purpose, within the one- or two-year period before the request was made. 15 U.S.C. § 1681g(a)(3).

20. Disclosing sufficient information about these third parties can assist consumers in determining whether their identity has been compromised, or whether a consumer reporting agency has made any disclosures for an impermissible purpose. *See also* 15 U.S.C. § 1681c-1(a)-(b) (permitting consumers to obtain additional copies of their consumer disclosures at no charge in the case of suspected identity theft).

21. Through immediate review of the details of when, and for what purpose, a consumer's information has been disclosed to a third party, a consumer may better understand whether their identity has been stolen, or whether the sheer number of inquiries from a particular third party warrants further investigation.

22. Additionally, Section 1681g(a)(2) requires a CRA to disclose the sources of information in the CRA's file, with certain exceptions not relevant here. Information about the sources of

information better enables the consumer to determine which furnisher is responsible for any inaccurate or fraudulent reporting, and to follow up with that person directly if desired.

*Fraud Alerts – Section 1681c-1*

23. Section 1681c-1 pertains to a consumer's placement of fraud alerts with the CRA on their consumer files to protect their private information from disclosure in the case of actual or suspected fraud.

24. Section 1681c-1(a) of the Fair Credit Reporting Act entitles a consumer who believes they may be or have become a victim of identity theft to request (1) that a CRA place a 90-day fraud alert on their file ("Initial Fraud Alert"), and (2) that the CRA provide them with a copy of their Section 1681g disclosures within three days, upon the consumer's request. The CRA must also notify all other national CRAs of the fact of that alert.

25. Section 1681c-1(b) of the Fair Credit Reporting Act entitles a consumer who submits an identity theft report to request (1) that a CRA place a 7-year fraud alert on their file ("Extended Fraud Alert"), and (2) that the CRA provide them with two copies of their Section 1681g disclosures within three days, upon the consumer's request. The CRA must also notify all other national CRAs of the fact of that alert, and omit the consumer from a list of persons whose information could otherwise be accessed by third parties in connection with a transaction not initiated by the consumer.

26. Section 1681c-1(d) requires CRAs to develop reasonable procedures to ensure compliance with Section 1681c-1.

*Fraud Blocks – Section 1681c-2*

27. Section 1681c-2 provides consumers the right to request that a CRA block reported information which the consumer believes was reported due to fraud.

28.   Section 1681c-2(a) permits a consumer who believes that any information appearing on their consumer files to block that information.   Such a consumer must present (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the identification of the disputed information, and (4) the consumer's statement that the information does not relate to any transaction entered into.

29.   Section 1681c-2(b) obligates a CRA which receives proper notice to promptly notify the furnisher of the disputed information that the disputed information may arise from identity theft, that an identity theft report has been filed, that a block has been requested, and the effective dates of the block.

30.   Section 1681c-2(c) permits a CRA to decline or rescind a block if it determines that the consumer submitted their dispute in error or based on a misrepresentation of fact, or that the consumer obtained possession of goods, services, or money as a result of the blocked transaction or transactions.

31.   If a CRA declines to block information or rescinds the block, then pursuant to Section 1681c-2(c) (1)(c)(2) it must notify the consumer of its action no later than 5 business days after making this decision.[4]

### *Investigation of Consumer Disputes – Section 1681i and 1681s-2*

32.   Sections 1681i and 1681s-2(b) govern a CRA and a furnisher's reinvestigation and investigation of items of information whose accuracy and/or completeness is disputed, including information which is inaccurate due to fraud.

33.   Section 1681i(a)(1) permits a consumer to dispute the completeness of accuracy of any

---

[4] *See* 15 U.SC. 1681i(a)(5)(B) (providing CRA five business days to notify a consumer of any reinsertion of previously deleted material).

8

item of information in their file. When requested, the CRA must complete a reinvestigation of the disputed information no later than 30 days after the date the CRA receives notice of the dispute.[5]

34.   Section 1681i(a)(2) requires a CRA to notify any furnisher of the disputed information of the pendency of the consumer's dispute within 5 business days of receipt of that information. A CRA must attach all relevant information which the CRA has received from the consumer, including any relevant information the CRA obtains after the consumer originally submitted the dispute.

35.   Section 1681i(a)(4) requires the CRA to consider all relevant information which the consumer submitted in connection with the dispute.

36.   Section 1681i(a)(6) requires a CRA to notify the consumer of the results of any reinvestigation not found frivolous or irrelevant[6] within five days of completing that reinvestigation. In its notice, the CRA must provide, *inter alia*, (1) a statement the reinvestigation is completed, and (2) a consumer report based on the consumer's file as revised as a result of the reinvestigation.[7]

37.   Section 1681i(d) permits a consumer to request that if a CRA's reinvestigation results in deletion of information or any notation that the consumer disputes the outcome of a reinvestigation,[8] the consumer may direct the CRA to send that information to any person who received a consumer report on that consumer within the prior two years for

---

[5] Under Section 1681i(a)(1)(B), this 30-day period may be extended for not more than 15 days if the CRA receives information from the consumer during the original 30-day period which is relevant to the reinvestigation.

[6] *See* Section 1681i(a)(3).

[7] *See also* Section 1681b(a)(2) (permitting disclosure of a consumer report in accordance with the written instructions of the consumer to whom the report relates).

[8] *See* Sections 1681i(b)-(c).

9

employment purposes, or within the prior six months for any other purpose.

38.   Section 1681s-2(b) obligates furnishers of information, when notified of a dispute of information by a CRA pursuant to Section 1681i, to complete an investigation of the disputed information.  Such an investigation requires the furnisher to review all of the relevant information, update any inaccurate information, and to notify all national CRAs and other CRAs to whom it reports if its investigation results in the deletion or updating of any item of information.  The furnisher must complete this investigation within the 30-day reinvestigation period provided for in Section 1681i(a)(1).

### *Damages – Sections 1681n and 1681o*

39.   Section 1681n provides that a consumer who demonstrates that a furnisher or CRA willfully violated the FCRA is entitled to actual damages, as well as attorney's fees and costs, as well as statutory damages of between $100 and $1000, and any punitive damages that the Court may allow.

40.   Section 1681o provides that a consumer who demonstrates that a furnisher or CRA negligently violated the FCRA is entitled to actual damages, as well as attorney's fees and costs.

### **Experian's FCRA Violations**

### *Scope of Plaintiff's Disputed Information*

41.   Plaintiff attempted to remove several inaccurately reported items of data from his Experian file for the better part of the year.  His various disputes were principally concerned with the following:

   a.   **Disputed Tradelines**:

      i.   New York State Board of Higher Education, partial account number 3038

("NY Higher Education Tradeline"), which was reported negatively as a "collection" account.

    ii.   Five different accounts from Navient, partial account Nos. 1994, 1995, 1996, 1997, and 1998 (collectively, the "Navient Tradelines"). Each of the Navient Tradelines was reporting negatively, with, *inter alia*, multiple 180-day late payments.

   b.  **Disputed Addresses**: Addresses other than his home address (collectively, "Disputed Addresses")[9]

***Experian's Violations of Sections 1681c-1, 1681c-2, 1681e(a), 1681e(b), and 1681i:***

***Timeline of Plaintiff's disputes***

42. On September 22, 2017, Plaintiff obtained a Section 1681g disclosure, Report No. 1118-8734-48 ("September 22 2017 Experian Report"). Experian explained to Plaintiff that he had received this Report because Experian had been "notified by one or more of the nationwide consumer credit reporting companies that you recently reported to them that you believe information on your credit report is inaccurate due to fraud." In the Report, Experian notified Plaintiff that it had placed an Initial Fraud Alert on his file, which would expire on December 21, 2017.

43. The September 22, 2017 Experian Report contained all of the Disputed Tradelines, as well as the Disputed Addresses and Disputed Phone Numbers.

44. In mid-January 2018, Plaintiff sent Experian a letter via facsimile, in which he disputed all of the Disputed Tradelines as inaccurate due to fraud ("January 2018 Experian Dispute").

---

[9] Plaintiff has also disputed several inquiries appearing on his file, particularly from Sprint and Convergent Outsourcing.

Plaintiff's Dispute served as a request under both Section 1681c-2(a) and 1681i(a). Plaintiff's This triggered Experian's obligations to notify Navient and the NY Board under Sections 1681c-2(b) and 1681i(a)(2).

45.     On January 18, 2018, Experian sent Plaintiff a Section 1681g disclosure, Report No. 2201-5834-40 ("January 18 Experian Report").  Thereunder, Experian rereported all of the inaccurate, derogatory Navient Tradelines and NY Board Tradeline.

46.     On January 19, 2018, Experian sent Plaintiff a communication, Report No. 3275-3928-83 ("January 19 Experian Letter"), in which it stated that it had added an Extended Fraud Alert to his credit report pursuant to Section 1681c-1(b).  On January 23, 2018, Experian sent Plaintiff another communication, Report No. 3409-9102-51 ("January 23 Experian Letter").  Therein, Experian explained that it had received an identity theft report from Plaintiff but needed additional information to complete the processing of the report.

47.     On February 5, 2018, Experian sent Plaintiff a Section 1681g disclosure and Section 1681i(a)(6)(B)(2)(ii) consumer report, Report No. 3409-9102-51 ("February 5 2018 Experian Report").  Therein, Experian failed to remove any of the Disputed Tradelines. Instead, Experian informed Plaintiff that "the company that reported the information has certified to Experian that the information is accurate."

48.     On May 23, 2018, Plaintiff sent another dispute to Experian seeking to remove information based on identity fraud: (1) all of the Disputed Tradelines; and (2) the Disputed Addresses ("May 23 2018 Experian Dispute").  Plaintiff's Dispute served as a request under both Section 1681c-2(a) and 1681i(a).  This triggered Experian's obligations to notify Navient

and the NY Board, as well as the unnamed furnishers of the Disputed Addresses,[10] under Sections 1681c-2(b) and 1681i(a)(2).  Plaintiff also explained in his dispute letter that he had been unable to purchase a home, could not access the credit he was entitled to, and had experienced distress.

49.   On June 8, 2018, Experian responded to Plaintiff's request, providing him with a communication, Report No. 1273-1739-61 (the "June 8 Experian Letter").  In the June 8 Experian Letter, Experian explained that it had interpreted Plaintiff's request as one which sought to "block" the information pursuant to Section 1681c-2.  Confusingly, Experian explained to Plaintiff that "it is missing the name and/or badge number of the law enforcement personnel who processed the report," without specifying what "it" was. Experian nonetheless informed Plaintiff that it had "conveyed your *dispute* to the furnisher(s) of the information directly."

50.   On June 12, 2018, Experian sent Plaintiff a Section 1681g disclosure and Section 1681i(a)(6)(B)(2)(ii) consumer report, Report No. 2749-8042-26, ("June 12 2018 Experian Report").[11]  Therein, Experian continued to inaccurately report addresses for Plaintiff other than his actual home address.  Further, it continued to list his actual home address as "high risk since it is a non-residential address."  In this Report, Experian notified Plaintiff that his Navient and New York Board tradelines were "still pending," with an anticipated completion date of June 30, 2018.

51.   On June 25, 2018, Experian sent Plaintiff a Section 1681g disclosure and Section

---

[10] Because Experian has not identified the sources of these addresses, Plaintiff cannot name them as parties to this lawsuit.

[11] In the June 12 Experian Report, Experian now clarified that it needed the "name and/or badge number of the law enforcement personnel who processed the report," while abandoning its confusing use of the word "it."

1681i(a)(6)(B)(2)(ii) consumer report, Report No. 1273-1739-61 ("June 25 2018 Experian Report"). Therein, Experian explained to Plaintiff that the disputed information on his Navient Tradelines and NY Board Tradeline had been updated, but not deleted. Experian also deleted several more of the Disputed Addresses, but two additional Disputed Addresses remained.

52.  On July 9, 2018, Experian sent Plaintiff yet another Section 1681g disclosure and Section 1681i(a)(6)(B)(2)(ii) consumer report.  This document was combined with two communications entitled "important information;" both Experian's reinvestigation and the "important information" documents contained the same report number, No. 2080-4703-40 (collectively, "First July 9 2018 Experian Report").  In the first "important information" document, Experian told Plaintiff that a police report he had submitted "does not contain required information," and Experian requested "additional information" from Plaintiff.  In the second "important information" document, Experian gave Plaintiff an ultimatum: "unless you send us additional relevant information to support your claim, we will not reinvestigate [the Navient Tradelines and the NY Board Tradeline] again." Adding to the confusion, Experian also explained that the NY Board Tradeline had been *deleted*, but did not specifically mention any disposition of Plaintiff's dispute related to the Navient Tradelines.

53.  Adding to the confusion, on July 9, 2018, Experian sent Plaintiff *another* Section 1681g disclosure and Section 1681i(a)(6)(B)(2)(ii) consumer report, Report No. 1006-7348-71 ("Second July 9, 2018 Experian Report").  Thereon, Experian explained that it had deleted the Navient Tradelines, and the NY Board Tradeline.

54.  Thus, on a pair of reports issued on the same day, Experian explained to Plaintiff that in

connection with the Navient Tradelines, (1) he had not submitted sufficient information to support his dispute, (2) his dispute would not be reinvestigated again, but (3) his Navient Tradelines had been deleted.

55. On July 9, 2018, not knowing what to believe from these multiple conflicting communications, Plaintiff sent Experian another dispute, in which he again challenged Experian's reporting of the Navient Tradelines and NY Board Tradeline (the "July 9, 2018 Experian Dispute").  He attached a copy of his police report, appropriate identifying information, and copies of two prior credit reports.

56. On July 24, 2018, Experian sent Plaintiff *another* Section 1681g disclosure and Section 1681i(a)(6)(B)(2)(ii) consumer report, Report No. 1006-7348-71 (the "July 24, 2018 Experian Report").  Experian's Report did not specify which of the disputed accounts had been blocked, beyond stating cryptically that "other items disputed are not currently displaying on your personal credit report."  The Disputed Tradelines continued to appear, as did the remaining two Disputed Accounts.

### *Experian's violations of Section 1681g(a)(1)*

57. Experian was obligated to make its 15 U.S.C. § 1681g disclosures in a manner that was not misleading or confusing to ordinary consumers.  *See* 15 U.S.C. § 1681g(a).  Thereunder, Experian was required to provide all information in Plaintiff's file that had or might be provided in a consumer report on that consumer.

58. Experian's Section 1681g disclosures included the September 22, 2017 Experian Report, the January 18, 2018 Experian Report, the February 5, 2018 Experian Report, the June 12, 2018 Experian Report, the June 25, 2018 Experian Report the First July 9, 2018 Experian Report, the Second July 9, 2018 Experian Report, and the July 24, 2018 Experian Report.

In addition to these eight disclosures, on June 20, 2018, Experian sent another Section 1681g disclosure, Report No. 3689-8366-37 (the "June 20, 2018 Experian Report"). Each of these nine disclosures suffered from numerous defects which rendered them confusing to the average consumer in violation of Section 1681g(a)(1).

59. The first systemic defect was Experian's explanation of the inquiries that others had made on its file. Experian's reports contained a list of inquiries shared both with others ("Hard Inquiries") and those purportedly only shared with Plaintiff ("Soft Inquiries").

60. To explain its Soft Inquiries, Experian explained, "we offer credit information about you to those with a permissible purpose." However, Experian did not explain or identify the reason why each particular Soft Inquiry had been made. Experian clearly had the capacity to provide a plain-English description for the inquiries on its file.[12] For example, the July 24, 2018 Experian Report listed three inquiries from LexisNexis, and another from LexisNexis/State Farm, as having been made for "insurance underwriting." Experian also explained the purpose for other disclosures, such as for "secondary logging."[13]

61. However, while Experian included a non-exhaustive list of the reasons by which any Soft Inquiry had been made, it did not explain the purpose for all soft inquiries, which had been made, creating additional confusion for Plaintiff who wanted to assess legitimate versus

---

[12] For example, on the February 5 2018 Experian Report, explained that CBC Innovis's January 16, 2018 inquiry had been made for "real estate;" One Nevada Credit Union's November 8, 2017 inquiry was for a "credit card;" New York State Higher Education's January 13, 2017 inquiry was for "education; and that NowCom/Auto World had inquired on August 29, 2016 in connection with an "auto loan." When Experian did not have any purpose, it stated the same: Performat Financial Corp.'s May 26, 2017 hard inquiry was listed as "unspecified."

[13] A later July 24, 2018 Experian disclosure also included a January 17, 2018 inquiry from CBC Innovis on behalf of the U.S. Department of Housing for "secondary logging," and a January 18, 2018 inquiry from CBC Innvois on behalf of LDWholesale for "secondary logging." *See* July 24 Experian Report, addressed below.

impermissible credit inquiries. This included soft inquiries from New York Board, Convergent Outsourcing, and Sprint – issues which Plaintiff identified as being related to Plaintiff's claims of identity theft.

62.    On information and belief, Experian stores a copy of the permissible purpose any subscriber may have for making an inquiry in its files, and can track the purpose types any third party may have to make an inquiry into a consumer's file. Thus, information about when any soft inquiry was made could and should have been disclosed to Plaintiff on his disclosure pursuant to Section 1681g(a)(1), but it was not provided.

63.    This failure to disclose a plain-English description of each soft inquiry in Experian's file was confusing to an ordinary consumer like Plaintiff, who would have to guess as to why a consumer report had been furnished to the requesting party ("User").

64.    The confusion regarding Experian's disclosures did not stop with its omission of this information, however. In addition, Experian misrepresented when it would permit third parties to access credit. For example, Experian explained to Plaintiff in its Section 1681g disclosures that "[w]e offer credit information about you to those with a permissible purpose," when in fact on information and belief Experian makes such information available to consumers for purposes which are impermissible in nature.[14]

65.    Representing that Plaintiff's credit information would be made available for a permissible purposes, while not reporting that his information would be also be made available for purposes not permissible under the FCRA, had the tendency to confuse an ordinary consumer like Plaintiff, in violation of 15 U.S.C. § 1681g.

---

[14] *See Foskaris v. Experian*, No. 17-cv-506-KJD-PAL, ECF Dkt. 97 (D. Nev. Mar. 21. 2018).

17

*Experian's violations of Section 1681g(a)(2)*

66.   Experian's disclosure of "source" material is no less opaque.  For example, Experian's disclosures only explain the source of addresses which it reports with cryptic, numeric identifications that did not explain who had actually provided that information.

67.   When Plaintiff directly challenged this information, Experian was no less opaque.  For example, Experian told Plaintiff in the June 12, 2018 Experian Report that "we store address information as it is sent to us by your credit grantors or from information contained in public records."  However, Experian did not specify in plain English which source of information it had used to obtain the address information Plaintiff had disputed except through their unrecognizable numeric codes, thus frustrating Plaintiff's ability to actually contact these sources to dispute the information.

68.   Since Plaintiff believed that these inaccurate addresses had been used by identity thieves to wrongfully open accounts his name, the omission of the source of information confounded Plaintiff's ability to actually follow up with the sources of information to dispute the addresses.  In so doing, Experian violated Section 1681g(a)(2), which required Experian to disclose the "source" of information for the disputed addresses in a manner which was not confusing to an average consumer like Plaintiff.

*Experian's violations of Section 1681g(a)(3)*

69.   The February 5, 2018 Experian report contained, *inter alia*, a soft inquiry from Convergent Outsourcing on February 1, 2018.  However, in the June 12, 2018 Experian Report, Experian omitted any reference to the Convergent Outsourcing inquiry – even though less than six months had passed between the date of the inquiry and the date of the June 12, 2018 Experian Report.

70.    In so doing, Experian violated Section 1681g(a)(3) of the FCRA, which required it to identify the names of all persons who had procured a consumer report during the six-month period preceding the date of the request.

71.    Experian's failure to disclose this inquiry was especially important to Plaintiff, because he had contested the Convergent Outsourcing account as fraudulent and evidence of the inquiry substantiated his suspicions that his account was being fraudulently accessed. Furthermore, removal of the inquiry suggested that Convergent Outsourcing lacked a permissible purpose to procure Plaintiff's information.

### *Experian's liability to Plaintiff*

### **September 22, 2018 Experian Report**

72.    In failing to provide a plain-English description of the permissible purposes for each soft inquiry Experian listed, Experian violated Section 1681g(a)(1), and consequently, Section 1681c-1.

73.    In failing to explain to Plaintiff that third parties could access his credit information for purposes that were not permissible, Experian violated Section 1681g(a)(1), and consequently, Section 1681c-1.

74.    In failing to provide the sources of information – including address information – Experian violated Section 1681g(a)(2), and consequently, Section 1681c-1.

### **February 5 2018 Experian Reinvestigation**

75.    Because Experian failed to remove any of the Disputed Tradelines in the February 5, 2018 Experian Reinvestigation, Experian violated Sections 1681c-2 and 1681i.

76.    Alternatively, Experian failed to notify the furnishers of disputed information, in violation of its obligations under Sections 1681c-2(b) and 1681i(a)(2).

77.   Alternatively, Experian failed to notify the furnishers of disputed information of all relevant information Plaintiff had submitted in connection with his dispute, in violation of its obligations under Section 1681i(a)(2).

78.   In failing to properly block Plaintiff's information and/or fail to adequately reinvestigate Plaintiff's dispute, Experian failed to implement reasonable procedures designed to ensure the maximum accuracy of credit information it transmitted on consumer reports, in violation of Section 1681e(b).

79.   In failing to properly block Plaintiff's information when Plaintiff first requested it, Experian failed to implement reasonable procedures designed to ensure that only persons who had a permissible purpose could procure information from Experian.  Had Experian properly responded to Plaintiff's requests to block this information, third parties without a permissible purpose would not have been able to procure Plaintiff's information, in violation of 15 U.S.C. 1681e(a).

80.   In failing to provide a plain-English description of the permissible purposes for each soft inquiry Experian listed, Experian violated Section 1681g(a)(1).

81.   In failing to explain to Plaintiff that third parties could access his credit information for purposes that were not permissible, Experian violated Section 1681g(a)(1).

82.   In failing to provide the sources of information – including address information – Experian violated Section 1681g(a)(2).

**June 12, 2018 Experian Report**

83.   Because Experian failed to remove all of the Disputed Addresses in the June 12, 2018 Experian Report, Experian violated Section 1681i.

84.   Alternatively, Experian failed to notify the furnishers of disputed information, in violation

of its obligations under Sections 1681c-2(b) and 1681i(a)(2).

85.  Alternatively, Experian failed to notify the furnishers of disputed information of all relevant information Plaintiff had submitted in connection with his dispute, in violation of its obligations under Section 1681i(a)(2).

86.  In failing to adequately reinvestigate Plaintiff's dispute, Experian failed to implement reasonable procedures designed to ensure the maximum accuracy of credit information it transmitted on consumer reports, in violation of Section 1681e(b).

87.  In failing to provide a plain-English description of the permissible purposes for each soft inquiry Experian listed, Experian violated Section 1681g(a)(1).

88.  In failing to explain to Plaintiff that third parties could access his credit information for purposes that were not permissible, Experian violated Section 1681g(a)(1).

89.  In failing to provide the sources of information – including address information – Experian violated Section 1681g(a)(2).

90.  In failing to report the February 1, 2018 Convergent Outsourcing inquiry, Experian violated Section 1681g(a)(3).

**June 20, 2018 Experian Report**

91.  In the June 20, 2018 Experian Report, Experian failed to provide a plain-English description of the permissible purposes for each soft inquiry Experian listed violated Section 1681g(a)(1).

92.  In failing to explain to Plaintiff that third parties could access his credit information for purposes that were not permissible, Experian violated Section 1681g(a)(1).

93.  In failing to provide the sources of information – including address information – Experian violated Section 1681g(a)(2).

94.    In failing to report the February 1, 2018 Convergent Outsourcing inquiry, Experian violated Section 1681g(a)(3).

**June 25, 2018 Experian Report**

95.    Because Experian failed to remove all of the Disputed Tradelines in the June 25, 2018 Experian Report, Experian violated Section 1681i.

96.    Alternatively, Experian failed to notify the furnishers of disputed information, in violation of its obligations under Sections 1681c-2(b) and 1681i(a)(2).

97.    Alternatively, Experian failed to notify the furnishers of disputed information of all relevant information Plaintiff had submitted in connection with his dispute, in violation of its obligations under Section 1681i(a)(2).

98.    In failing to adequately reinvestigate Plaintiff's dispute, Experian failed to implement reasonable procedures designed to ensure the maximum accuracy of credit information it transmitted on consumer reports, in violation of Section 1681e(b).

99.    In failing to provide a plain-English description of the permissible purposes for each soft inquiry Experian listed, Experian violated Section 1681g(a)(1).

100.   In failing to explain to Plaintiff that third parties could access his credit information for purposes that were not permissible, Experian violated Section 1681g(a)(1).

101.   In failing to provide the sources of information – including address information – Experian violated Section 1681g(a)(2).

**First July 9, 2018 Report**

102.   Because Experian failed to remove all of the Disputed Tradelines in the First July 9, 2018 Experian Report, Experian violated Section 1681i.

103.   Alternatively, Experian failed to notify the furnishers of disputed information, in violation

of its obligations under Sections 1681c-2(b) and 1681i(a)(2).

104.  Alternatively, Experian failed to notify the furnishers of disputed information of all relevant information Plaintiff had submitted in connection with his dispute, in violation of its obligations under Section 1681i(a)(2).

105.  In failing to adequately reinvestigate Plaintiff's dispute, Experian failed to implement reasonable procedures designed to ensure the maximum accuracy of credit information it transmitted on consumer reports, in violation of Section 1681e(b).

106.  In failing to provide a plain-English description of the permissible purposes for each soft inquiry Experian listed, Experian violated Section 1681g(a)(1).

107.  In failing to explain to Plaintiff that third parties could access his credit information for purposes that were not permissible, Experian violated Section 1681g(a)(1).

108.  In failing to provide the sources of information – including address information – Experian violated Section 1681g(a)(2).

**Second July 9, 2018 Report**

109.  Because Experian failed to remove all of the Disputed Addresses in the Second July 9, 2018 Experian Report, Experian violated Section 1681i.

110.  Alternatively, Experian failed to notify the furnishers of disputed information, in violation of its obligations under Sections 1681c-2(b) and 1681i(a)(2).

111.  Alternatively, Experian failed to notify the furnishers of disputed information of all relevant information Plaintiff had submitted in connection with his dispute, in violation of its obligations under Section 1681i(a)(2).

112.  In failing to adequately reinvestigate Plaintiff's dispute, Experian failed to implement reasonable procedures designed to ensure the maximum accuracy of credit information it

transmitted on consumer reports, in violation of Section 1681e(b).

113. In failing to provide a plain-English description of the permissible purposes for each soft inquiry Experian listed, Experian violated Section 1681g(a)(1).

114. In failing to explain to Plaintiff that third parties could access his credit information for purposes that were not permissible, Experian violated Section 1681g(a)(1).

115. In failing to provide the sources of information – including address information – Experian violated Section 1681g(a)(2).

**July 24, 2018 Report**

116. Because Experian failed to remove all of the Disputed Addresses in the July 24, 2018 Experian Report, Experian violated Section 1681c-2(b) and 1681i.

117. Alternatively, Experian failed to notify the furnishers of disputed information, in violation of its obligations under Sections 1681c-2(b) and 1681i(a)(2).

118. Alternatively, Experian failed to notify the furnishers of disputed information of all relevant information Plaintiff had submitted in connection with his dispute, in violation of its obligations under Section 1681i(a)(2).

119. In failing to adequately reinvestigate Plaintiff's dispute, Experian failed to implement reasonable procedures designed to ensure the maximum accuracy of credit information it transmitted on consumer reports, in violation of Section 1681e(b).

120. In failing to provide a plain-English description of the permissible purposes for each soft inquiry Experian listed, Experian violated Section 1681g(a)(1).

121. In failing to explain to Plaintiff that third parties could access his credit information for purposes that were not permissible, Experian violated Section 1681g(a)(1).

122. In failing to provide the sources of information – including address information – Experian

violated Section 1681g(a)(2).

### *Plaintiff's Damages*

123. Plaintiff has suffered emotional distress as a result of his protracted process of attempting to remove and dispute fraudulent information.   In particular, Plaintiff has suffered considerable frustration, which he believes has contributed to stomach pains.  It has also led to marital disharmony in the form of arguments with his spouse, as well as an increase in stress and diminished optimism and hope.

124. Plaintiff has also suffered damage to his creditworthiness, including multiple denials of credit, during the period when the inaccurate information he disputed appeared on his Experian Reports.  Plaintiff also believes that he has only been able to obtain credit at rates which he believes would have been better if his credit issues had been corrected.

125. Experian's confusing disclosures also prevented Plaintiff from fully recognizing and appreciating the information which appeared on his disclosures so that he could dispute it. This was particularly true of the Disputed Addresses, for which Experian never disclosed the source of the information.

126. Plaintiff has also suffered out-of-pocket losses in the form of lost time, postage, mailings, and transportation.

127. Experian's conduct in repeatedly failing to reinvestigate his disputed information was willful.  Therefore, Plaintiff is entitled to statutory damages.

128. Experian's conduct in failing to disclose the sources of his information, the plain-English descriptions of permissible purposes for soft inquiries, and in failing to explain to Plaintiff that his credit information could be disclosed for purposes which were not permissible, was also willful – also entitling Plaintiff to statutory damages.

129.   Plaintiff has been obligated to retain an attorney to prosecute this case, and is entitled to an award of attorney's fees and costs.

## Equifax's FCRA Violations

130.   On May 23, 2018, Plaintiff sent a dispute regarding credit information with Experian and Equifax ("May 23 2018 Equifax Dispute").  Therein, Plaintiff he attempted to dispute accounts based on identity fraud with (1) all of the Disputed Tradelines.  He also disputed all addresses affiliated with his name other than his home address, as well as all phone numbers other than his current phone number.  Plaintiff also explained in his dispute letter that he had been unable to purchase a home, could not access the credit he was entitled to, and had experienced distress.

131.   Upon information and belief, Equifax failed to provide Plaintiff with a report of the results of its reinvestigation within 45 days of receiving notice of Plaintiff's dispute, thus violating its duties to do so under 15 U.S.C. § 1681i(a)(6).

132.   Therefore on July 9, 2018, with no word from Equifax, Plaintiff sent Equifax another dispute, in which he challenged Equifax's reporting of the NY Board Tradeline, and an account with Convergent Outsourcing ("July 9 2018 Equifax Dispute").  Attached to his disputes was, *inter alia*, a copy of his police report, appropriate identifying information.

133.   Equifax was required to conduct an investigation into these specific accounts on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

134.   On or about July 19, 2018, Plaintiff finally received a "reinvestigation" report from Equifax, Confirmation No. 8200064441 ("First Equifax Reinvestigation").  The First Equifax Reinvestigation was both a Section 1681g consumer disclosure, and a Section 1681i(a)(6)B(2)(ii) consumer report.  Thereon, Equifax indicated that the "results of the

dispute you recently filed with Equifax are complete." Confusingly, however, Equifax also advised Plaintiff that "Equifax, at this time, will not block the information subject to the submitted identity [t]heft and/or police report you provided as part of the dispute," but that Equifax would be "contacting each creditor directly to verify the account/s on your behalf."

135. Equifax's contradictory explanation violated Section 1681g(a)(1), because it simultaneously suggested to Plaintiff both that his dispute had been completed, and also that his dispute was ongoing.

136. On or about July 19, 2018, Plaintiff received another "reinvestigation" report from Equifax, Confirmation No. 8200062866 ("Second Equifax Reinvestigation"). The Second Equifax Reinvestigation was both a Section 1681g consumer disclosure, and a Section 1681i(a)(6)B(2)(ii) consumer report. Thereon, Therein, Equifax stated that it had "confirmed" that the NY Board Tradeline belonged to Plaintiff, and that the balance on the Tradeline had been modified to "PAST DUE."

137. Because Experian failed to remove the NY Higher Education Tradeline, Equifax violated Sections 1681c-2(b) and 1681i.

138. Alternatively, Equifax failed to notify the furnishers of disputed information, in violation of its obligations under Sections 1681c-2(b) and 1681i(a)(2).

139. Alternatively, Equifax failed to notify the furnishers of disputed information of all relevant information Plaintiff had submitted in connection with his dispute, in violation of its obligations under Section 1681i(a)(2).

140. In failing to adequately reinvestigate Plaintiff's dispute, Equifax failed to implement reasonable procedures designed to ensure the maximum accuracy of credit information it transmitted on consumer reports, in violation of Section 1681e(b).

141. Plaintiff has suffered emotional distress as a result of his protracted process of attempting to remove and dispute fraudulent information. In particular, Plaintiff has suffered considerable frustration, which he believes has contributed to stomach pains. It has also led to marital disharmony in the form of arguments with his spouse, as well as an increase in stress and diminished optimism and hope.

142. Plaintiff has also suffered damage to his creditworthiness, including multiple denials of credit. Plaintiff also believes that he has only been able to obtain credit at rates which he believes would have been better if his credit issues had been corrected.

143. Plaintiff has also suffered out-of-pocket losses in the form of lost time, postage, mailings, and transportation.

144. Equifax's conduct in repeatedly failing to reinvestigate and block his disputed information was willful. Therefore, Plaintiff is entitled to statutory damages.

145. Plaintiff has been obligated to retain an attorney to prosecute this case, and is entitled to an award of attorney's fees and costs.

### NY Board's FCRA Violations

146. Upon receipt of disputes from Experian and Equifax, NY Board was obligated to perform a reasonable investigation of the disputed information pursuant to Section 1681s-2(b). Because the NY Board confirmed on at least one occasion that the disputed information was accurate without deleting it, NY Board failed to conduct a reasonable investigation, which would have resulted in the deletion of the NY Board Tradeline from Plaintiff's Experian and Equifax Reports.

147. Plaintiff has suffered emotional distress as a result of his protracted process of attempting to remove and dispute fraudulent information. In particular, Plaintiff has suffered

considerable frustration, which he believes has contributed to stomach pains. It has also led to marital disharmony in the form of arguments with his spouse, as well as an increase in stress and diminished optimism and hope.

148. Plaintiff has also suffered damage to his creditworthiness, including multiple denials of credit, during the period when the inaccurate information he disputed appeared on his Experian Reports. Plaintiff also believes that he has only been able to obtain credit at rates which he believes would have been better if his credit issues had been corrected.

149. Plaintiff has also suffered out-of-pocket losses in the form of lost time, postage, mailings, and transportation.

150. NY Board's conduct in failing to investigate his disputed information was willful. Therefore, Plaintiff is entitled to statutory damages.

151. Plaintiff has been obligated to retain an attorney to prosecute this case, and is entitled to an award of attorney's fees and costs.

## **Navient's FCRA Violations**

152. Upon receipt of disputes from Experian, Navient was obligated to perform a reasonable investigation of the disputed information pursuant to Section 1681s-2(b). Because Navient confirmed on at least one occasion that the disputed information was accurate without deleting it, Navient failed to conduct a reasonable investigation, which would have resulted in the deletion of the Navient Tradelines from Plaintiff's Experian Reports.

153. Plaintiff has suffered emotional distress as a result of his protracted process of attempting to remove and dispute fraudulent information. In particular, Plaintiff has suffered considerable frustration, which he believes has contributed to stomach pains. It has also led to marital disharmony in the form of arguments with his spouse, as well as an increase

in stress and diminished optimism and hope.

154.   Plaintiff has also suffered damage to his creditworthiness, including multiple denials of credit, during the period when the inaccurate information he disputed appeared on his Experian Reports.  Plaintiff also believes that he has only been able to obtain credit at rates which he believes would have been better if his credit issues had been corrected.

155.   Plaintiff has also suffered out-of-pocket losses in the form of lost time, postage, mailings, and transportation.

156.   Navient's conduct in failing to investigate his disputed information was willful.  Therefore, Plaintiff is entitled to statutory damages.

157.   Plaintiff has been obligated to retain an attorney to prosecute this case, and is entitled to an award of attorney's fees and costs.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**ALL DEFENDANTS**

158.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

159.   The foregoing acts and omissions related to Defendants constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

160.   As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

161.   As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

## SECOND CAUSE OF ACTION
## VIOLATION OF NRS 598C
## EXPERIAN ONLY

162.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

163.   The foregoing acts and omissions related to Experian constitute numerous and multiple willful, or reckless violations of NRS 598C, including but not limited to each and every one of the above-cited provisions of NRS 598C.

164.   As a result of each and every willful violation of NRS 598C, Plaintiff is entitled to actual damages as the Court may allow pursuant to NRS 598C.190(1); punitive damages as this Court may allow, pursuant to NRS 598C.190(2); and reasonable attorney's fees and costs pursuant to NRS 598C.190(3).

## PRAYER FOR RELIEF

Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681 ET SEQ. (FCRA)

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. §

1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NRS 598C**
**EXPERIAN ONLY**

- an award of actual damages pursuant to NRS 598C190(1);

- award of punitive damages pursuant to NRS 598C.190(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to NRS 598C.190(3); and

- any other relief the Court may deem just and proper.

**TRIAL BY JURY**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: January 4, 2019

Respectfully submitted,

/s/ David H. Krieger, Esq.
David H. Krieger, Esq.
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123

Matthew I. Knepper, Esq.
Miles N. Clark, Esq.
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Attorneys for Plaintiff